Williams, C. J.
The First National Bank of Smithfield, defendant in error, duly recovered a money judgment -against George Medill and others, in the court oí common pleas of Franklin county, on the 19th day of June, 1888, and on the same day caused an execution to be issued thereon to the sheriff of Jefferson county who, on the 21st day of the same month, levied the writ on a tract of land situate in that county. The levy was indorsed on the writ, with a full description of the land, and an entry theren .of was duly made by the sheriff in his foreign execution docket, showing the amount of the judgment, the description of the land, the date of the levy, and all other facts required by law to be entered on his docket. Those entries were made at the time of the levy, and indexed in the docket, direct and reverse. Afterwards, on the 10th day of July, 1888, the execution was returned, by order of the plaintiff’s attorney, without further proceedings; which fact was also entered in the foreign execution docket. Both the levy and entries fail to state that no goods or chattels could be found whereon to levy the execution, and it does not appear that an effort was made to find any.
The land on which the levy was made, was at the time owned by Medill, the judgment debtor, but was encumbered by a mortgage previously executed by him, which had been recorded. Underlying the surface of the land was a vein of stone coal known as “Number 8 vein, Pittsburgh coal,” which, after the levy of the execution, was released by the mortgagee from the operation of his mortgage, and soon thereafter sold and conveyed by Medill to one Ham, who then sold and conveyed the same to the plaintiff in error. These purchases *249 were made in good faith, for value, and without actual knowledge of the execution levy, or the judgment. After the last purchase was made, the mortgage was foreclosed, and all of the land sold except the vein of coal which had been released, and the proceeds of the sale were insufficient' to reach the judgment of the bank, but were exhausted in the payment of the mortgage indebtedness, and prior liens. Thereupon the action below was brought by the bank, to which the plaintiff in error was made a party defendant, to obtain a sale of the vein of coal and subject the proceeds to the satisfaction of the bank’s judgment. The plaintiff in error set up its claim as a purchaser of the coal vein, and prayed that its title might be protected. The circuit court, to which the cause had been taken on appeal, found the facts substantially as above stated, and decreed the sale of the property in question, and the application of the proceeds to the satisfaction of the bank’s judgment; holding, that by the levy, the bank obtained a valid lien, and, that the plaintiff in error, under its purchase, took subject thereto.
The contention of the plaintiff in error here is, (1), that the bank acquired no lien on the land, because the levy was defective; or, (2), if a lien was thereby obtained, it expired with the execution, and therefore was not subsisting when the plaintiff in error made its purchase.
The defect in the levy, which it is claimed defeats the lien attempted to be obtained by it, is the omission of the sheriff to indorse on the writ the want of goods and chattels of the judgment debtor on which to levy the execution, and the absence of any showing that there was not sufficient property *250 of that kind to satisfy the judgment. This claim is based’ upon section 5383, of the Revised Statutes, which provides that: “The officer to whom a writ of execution is delivered shall proceed, immediately to levy the same upon the goods and chattels of the debtor; but if no goods and chattels can be found the officer shall indorse on the execution the words ‘no goods,’ and forthwith levy the same upon the lands and tenements of the debtor which are liable to satisfy the judgment.” This section of the statute, it is contended, precludes the making of a valid levy on lands, -until the officer, after a proper search, has failed to find sufficient chattel property of the debtor to satisfy the writ; and the abseneé of an indorsement on the writ of the want of such property appearing in the entries on the execution docket, prevents •their operation as constructive notice binding- on subsequent purchasers or creditors. But it is generally held, that statutory provisions like those contained in the section referred -to, prescribing the order to be observed by the officer in subjecting the property of the debtor to sale on writs of execution, are for the benefit of the debtor, and may be waived by him. They are directory in their nature; and though a failure to observe the order prescribed is an irregularity which maybe corrected in a direct proceeding instituted by the debtor, the levy is not open to collateral attack on that ground. While the statute enjoins the duty on the officer, in making a levy of his writ, to first seize the debtor’s personal property before resorting to his real property, it does not declare that unless that order is pursued a levy on the debtor’s land shall be invalid, or ineffectual to create a lien; and the failure of the *251 officer to proceed in the precise order directed should not deprive the creditor of the benefit of the levy, so long, at least, as fche debtor himself makes no objection to it. It may be to the advantage of the debtor to save his real property from sale, in preference to his chattel property; and this he may do by compelling resort first to be had to his chattel property when that is sufficient to satisfy the writ; but if he chooses not to exercise his right in that respect, a stranger who, at the time had no interest in the property, cannot be heard to assert it for him, nor interposeit as aground of objection to a levy on the debtor’s real property; nor would he seem to have any just ground of complaint where he buys after the lien has attached, and with legal notice of its existence.
An entry upon the land by the officer holding the writ is not necessary to constitute a valid levy; it is sufficient if the levy be indorsed on the writ, with a proper description of the land. The sheriff is required to keep in his office, a foreign execution ■ docket in which it is his duty to make entries of the date of each execution received by him from another county, and the date and amount of the judgment, and copy therein with his return, a full description of any real estate levied on; and the statute declares that “such entries so made shall be notice to subsequent purchasers and creditors of the matters therein contained.” When a levy is made upon land, the presumption is there were no goods on which to levy; but if a counter presumption should arise from the absence of an indorsement of no goods on the writ, that could only affect the burden •of proof in a controversy where the fact is material; that is, where the validity of the levy is *252 attacked in a direct proceeding by a party entitled to attack it. So that, when, as in the case now-before us, lands are purchased from a judgment debtor after the levy of an execution upon them and while the levy is a subsisting one, with legal notice of its existence, the omission of the officer to indorse no goods on the writ, or to make search for chattel property, does not render the levy invalid, or ineffectual as a lien, as against such purchaser.
The further inquiry in the case relates to the question whether the lien created by the levy had expired, or ceased to be operative, when the plaintiff in error acquired his title to the real property involved in this litigation. This question must find its solution in our legislation on the subject, the most important provisions of which are contained in sections 5374, 5375 and 5380, of the Revised Statutes.
By the provisions of section 5374, the lands and tenements of a judgment debtor, not exempt by law, situated in any County in the state are liable to be taken on execution. And section 5375, provides that: “Such lands' and tenements, within the county where the judgment is rendered, shall be bound for the satisfaction thereof from the first day of the' term at which the judgment is rendered, * * * and all other lands, as well as goods and chattels of the debtor, shall be bound from the time they are seized in execution.” It is not doubted that, by force of this last section, the judgment operates as a lien on all the lands of the judgment debtor in the county, where the judgment is rendered. " This is so because the statute declares such lands shall be bound for the satisfaction of the judgment; and, as the same *253 language is employed to create a charge upon the debtor’s lands situate in another county, when taken on execution issued on the judgment, it would seem to follow that, when so taken, the lien of the judgment operates upon them thereafter, as it does upon lands in the county where the judgment is ■rendered. No distinction in this respect is made by the statute; the only difference being with regard to the time when the lien attaches; and, in the one ease the lien is general upon all the debtor’s lands in the county, while in the other it becomes specific, and is limited to the lands actually seized., The reason for these differences is manifest. The judgment appears upon the public records of the county where rendered, and is constructive notice to all persons dealing with the debtor’s land situated in that county. Its existence and amount can be readily ascertained by an examina tion of the records. But it would be an unreasonable requirement that a person should make an examination of the public records of all the counties of the state, before he could safely acquire property which is shown to be clear by the records of the county where it is situated. When, therefore, an execution' issued to another county is there levied on lands, the sheriff is required to enter upon his foreign execution docket, • the date and amount of the judgment, by what court rendered, with a description of the land levied upon. This docket is a public record of that county, and the' entries become, by force of the statute, constructive notice, like other records of the county. Thereafter the judgment has the. same effect and operation as a lien on the lands so taken, as it has upon lands in the county were rendered, and the lien may be preserved and *254 continued in force in the same way. The effect of the levy is to extend the lien of the judgment to the land seized, with all the legal-consequences incident to the judgment. The duration of the lien is not limited to the time the writ has to run. The language of section 5380, if execution he not sued out within five years from the rendition of the judgment, or if that period intervenes between executions, ‘ ‘the judgment shall become dormant, and shall cease to operate as a lien on the estate of the debtor, ’ ’ plainly imports that it shall not so cease to operate when executions are issued within the times mentioned; and that language is not limited in its application to the lien of the judgment on the lands of the debtor in the county where the judgment is rendered.
It is contented, however, that other provisions of the statute require the sheriff to immediately proceed after levy of the execution to cause the lands to be appraised and sold; and, that a return of the writ after a levy, and before sale, by order of the creditor, thereby interrupting the officer’s proceeding, and preventing the performance of his legal duties, discharges the levy, and terminates the lien. It is apparent that to sustain this contention would practically defeat the provisions of section 5380, which clearly permit the lien to continue for a period of five years between executions. Under' that section it has been the common practice to cause executions to be levied and direct a return of the writ without sale, in order to obtain or preserve a lien; and we do not understand^ to be questioned, that the statute permits this to be done where the levy is on lands situate in the county where the judgment was rendered. The operation of the statute *255 authorizing the continuation of judgment liens in that mode is general, and without restriction as to where the lands may be situated; and the statutory provisions regulating the appraisement and sale of lands taken on execution are applicable alike in all cases without regard to the county in which the lands may be located. Any argument of inconvenience or delay to other creditors, resulting from that method of perpetuating the judgment lien, applies with no more force where the writ is levied outside the county, than it does to other execution levies; and there, can be no greater inconvenience or delay, in either case, than usually exists where property which other creditors seek to reach is encumbered with a valid lien. Such a lien does not interfere with the acquisition of subsequent liens, nor the remedies for their enforcement, nor the remedies of other creditors; and a purchaser always buys subject to a lien disclosed by public records which he is bound to examine. An examination of the sheriff’s foreign execution docket, by the plaintiff in error, before the consummation of his purchase, would have afforded sufficient information of the bank’s lien upon the property, and that the judgment had not been satisfied or suffered to become dormant; and the circuit court, in our opinion, committed no error in directing the application of the proceeds of the sale to the satisfaction of the judgment.

Judgment affirmed.